IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRITANEY NICOLE WELLS, on behalf of the ESTATE OF MICHAEL SCOTT HAYES, DECEASED, ) ) ) ) Plaintiff, ) ) v. ) ) GALFAB LLC, *et al.*, ) ) Defendants. ) | ) ) Case No. CIV-21-761-D |

## ORDER

Before the Court is Defendant Galfab, LLC's ("Galfab") Motion for Summary Judgment [Doc. No. 72]. Plaintiff filed a response in opposition [Doc. No. 85], to which Galfab replied [Doc. No. 86]. The matter is fully briefed and at issue.

## BACKGROUND

This case arises from a fatal workplace accident involving Michael Scott Hayes. Mr. Hayes worked for Envirodispose, a company engaged in the business of gathering, and disposing of, large refuse. As part of his job, Mr. Hayes was required to operate trucks equipped with a Galfab-manufactured Tilt Frame Refuse Container hoist (hereinafter referred to as the "roll-off hoist") in order to move and haul large containers. In October of 2020, while Mr. Hayes was attempting to load a container, he tightened—instead of loosened—the cable used to pull the container onto the roll-off hoist. The cable was attached to a hanger pin that ultimately sheared, and the cable and eyehook swung and struck Mr. Hayes in the head. Tragically, Mr. Hayes died as a result of the accident.

Plaintiff, individually and on behalf of the estate of Mr. Hayes, filed suit in the District Court of Oklahoma County and named Galfab, Galfab Holdings, Inc., and Premier Truck Sales & Rental, Inc. as Defendants.[1] Defendants removed the case to the Western District of Oklahoma a short time later. In Plaintiff's Third Amended Complaint, she asserts claims against Galfab for products liability and negligence, along with a request for punitive damages. In the instant Motion, Galfab seeks summary judgment on both claims, as well as Plaintiff's request for punitive damages.

## STANDARD OF DECISION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the facts and evidence are such that a reasonable jury could return a verdict for the nonmoving party. *Id.* All facts and reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id.* at 255.

A movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show

---

[1] Plaintiff previously dismissed Galfab Holdings, Inc. without prejudice [Doc. No. 31], and the Court granted Premier Truck Sales & Rental, Inc.'s Motion for Summary Judgment [Doc. No. 63]. Therefore, Galfab is the only Defendant remaining in this case.

2

a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); *see also* Fed. R. Civ. P. 56(c)(1)(A). The inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## UNDISPUTED MATERIAL FACTS[2]

On February 28, 2020, Envirodispose—an Oklahoma City-based company whose business is providing customers with rental roll-off containers—originally hired Michael Scott Hayes but terminated him the next day after a failed drug test for methamphetamine and amphetamine. Galfab Mot. Summ. J., Ex. 8 [Doc. No. 72-8] at 6.[3] Envirodispose later rehired Mr. Hayes after he completed substance-abuse training. *Id.*

As part of his employment with Envirodispose, Mr. Hayes was tasked with loading and unloading roll-off containers. To do that, Mr. Hayes drove a truck equipped with a roll-off hoist. Galfab Mot. Summ. J., Ex. 13 [Doc. No. 72-13], ¶ 4. The graphic[4] below shows

---

[2] This statement includes material facts that are supported by the record and not opposed in the manner required by Fed. R. Civ. P. 56(c)(1) and LCvR56.1(d). All facts properly presented by a party and not specifically controverted by an opponent are deemed admitted, pursuant to Fed. R. Civ. P. 56(e)(2) and LCvR56.1(e).

[3] Citations to the parties' filings reference the ECF file-stamped page number at the top of each page.

[4] The graphic was taken from Plaintiff's retained expert, Cameron C. Orr, P.E., CSP, CFPHS. *See* Pl.'s Resp., Ex. 2 [Doc. No. 85-2] at 6. The annotations on the graphic are Mr. Orr's.

a truck, equipped with a roll-off hoist, similar to the one Mr. Hayes was tasked with operating:



As one would expect, Envirodispose provided Mr. Hayes with training on how to properly operate the roll-off hoist, as well as the potential dangers associated with operating the roll-off hoist. Indeed, Envirodispose provided Mr. Hayes with roll-off hoist inspection, operation, and maintenance protocols.[5] *See generally* Galfab Mot. Summ. J., Ex. 5 [Doc. No. 72-5]; *see also* Galfab Mot. Summ. J., Ex. 13, ¶ 5. When loading a container onto the roll-off hoist, these materials instructed Mr. Hayes to "[r]etract the winch cylinders, pull the cable out to the rear of the hoist and raise the hoist so that the ground roller touches the ground." Galfab Mot. Summ. J., Ex. 5 at 8. Further, the Envirodispose materials include the following relevant warnings:

---

[5] As Galfab notes, it appears Envirodispose's manual is a near identical (if not identical) reproduction of Galfab's manual. *Compare* Galfab Mot. Summ. J., Ex. 5 [Doc. No. 72-5], *with* Galfab Mot. Summ. J., Ex. 7 [Doc. No. 72-7].

4

## WARNING!

If this equipment is not used properly, serious injury or death may occur. Anyone using this equipment must be properly trained and made aware of how dangerous the operations may be. It is important that anyone operating, adjusting, or servicing this equipment read this manual!

## !!CAUTION!!

THIS EQUIPMENT SHOULD BE OPERATED BY PROPERLY TRAINED PERSONNEL. THE HOIST SHOULD NO BE USED TO LIFT AND HAUL ANY WEIGHT THAT IS BELIEVED TO EXCEED THE LOAD RATING OF ANY OF THE INDIVIDUAL COMPONENTS OF THE ENTIRE PIECE OF EQUIPMENT. (EXAMPLE: HOIST, TIRES, TRUCK CHASSIS, SUSPENSION, ECT.) IMPROPER USE, MISUSE, OR LACK OF MAINTENANCE COULD CAUSE INJURY TO PERSONS AND/OR DAMAGE TO PROPERTY.

## SAFETY FIRST

1. READ AND UNDERSTAND the operator's manual before operating the hoist or any related equipment. Hydraulic systems are affected by the integrity of their components (i.e. hoses, valves, etc.), and possible stored potential energy.

## OPERATOR/EMPLOYEE RESPONSIBILITY

Employees/Operators who work on or use mobile equipment shall be responsible for:

1. Properly using all applicable safety features provided on the equipment.

2. Using equipment only after being properly instructed and trained.

3. Reporting any damage to, or malfunction of, the equipment when the damage occurs or as soon thereafter as practical. Reports must be submitted to the employer or responsible authority. Such reports shall be documented by the employer.

4. Ensuring that the area of operation around the hoist and container is clear of all persons during all phases of the operation.

5. Operating all equipment in accordance with the manufacturer's instructions.

6. Riding only in the cab and not on any other part of the mobile equipment.

7. Do not operate equipment if your work ability is impaired by fatigue, illness, or other causes.

8. BE ALERT TO ALL POSSIBLE HAZARDOUS SITUATIONS AND CONDITIONS.

*Id.* at 3, 4, 6, 16. Mr. Hayes signed a certification confirming he had read and understood the operator's manual and all safety protocols for the operation of the roll-off hoist system at issue. Galfab Mot. Summ. J., Ex. 4 [Doc. No. 72-4]; Galfab Mot. Summ. J., Ex. 13. ¶ 5.

On October 5, 2020, Mr. Hayes was operating a roll-off hoist and attempted to load the Envirodispose container shown below:



Galfab Mot. Summ. J., Ex. 2 [Doc. No. 72-2]. This was a task familiar to Mr. Hayes, as it is estimated that in the over six months he worked for Envirodispose, he picked up an average of six to eight loads per day. Galfab Mot. Summ. J., Ex. 8 at 6; Galfab Mot. Summ. J., Ex. 13, ¶ 6.[6] In his previous job with Boomer Environmental, Mr. Hayes performed the same type of work for over a year and a half. Galfab Mot. Summ. J., Ex. 13, ¶ 4. Despite his familiarity with operating the roll-off hoist, while attempting to load the container on

---

[6] Mr. Hayes' boss at Envirodispose, Dustin Watson, believes Mr. Hayes picked up an average of six to eight loads per day, while Galfab's retained expert, Lee Green, P.E., states Mr. Hayes averaged 10 loads per day. Plaintiff admits Mr. Hayes averaged six to eight loads per day, so that is the figure the Court uses. Ultimately, the difference is not material in deciding the instant Motion. Suffice it to say, Mr. Hayes was quite familiar with loading and unloading containers using the roll-off hoist.

October 5, 2020, Mr. Hayes tightened—instead of loosened—the cable and eyehook while it was attached to the hanger pin. Galfab Mot. Summ. J., Ex. 2; Galfab Mot. Summ. J., Ex. 8 at 6. Mr. Hayes' error caused the hanger pin to shear, and the cable and eyehook swung to where Mr. Hayes was standing and struck him in the head. *Id.*; *see also* Galfab Mot. Summ. J., Ex. 8 at 19. Mr. Hayes died from blunt force trauma to the head. Galfab Mot. Summ. J., Ex. 1 [Doc. No. 72-1].

At the time of the accident, Mr. Hayes had a 0.58 mcg/mL Methamphetamine and 0.11 mcg/mL Amphetamine level in his femoral blood. *Id.* This level of intoxication could lead to significant impairment and affect Mr. Hayes' ability to safely operate the roll-off hoist. Galfab Mot. Summ. J., Ex. 3 [Doc. No. 72-3] at 4. In addition to his impairment at the time of the accident, and as mentioned above, Mr. Hayes was improperly using the roll-off hoist's winch control system by retracting the cable instead of loosening the cable before the container-loading operation. Galfab Mot. Summ. J., Ex. 8 at 19. In so doing, Mr. Hayes did not follow applicable instructions or training for operation of the roll-off hoist. Galfab Mot. Summ. J., Ex. 13, ¶ 7. In the over 30 years that Galfab has used the design of the roll-off hoist, it is unaware of any issues relating to the hanger pin ever causing any injury. Galfab Mot. Summ. J., Ex. 12 [Doc. No. 72-12] at 2.[7]

---

[7] Although Troy Eikenberry testified specifically that the design has been used for 30 years, the cited deposition testimony does not include any statement regarding issues or injuries related to the hanger pin. However, Plaintiff admitted Galfab's undisputed material fact 30. Therefore, the assertion is deemed admitted for purposes of the instant Motion.

DISCUSSION

**I.    Galfab is entitled to summary judgment on Plaintiff's products-liability claim.**

Under Oklahoma law, "there are three elements to a manufacturer's product liability strict tort claim: the defect must have (1) caused the injury in question, (2) existed at the time it left the manufacturer's control, and (3) made the product unreasonably dangerous." *Smith v. Cent. Mine Equip. Co.*, 559 F. App'x 679, 687 (10th Cir. 2014) (citing *Kirkland v. Gen. Motors Corp.*, 521 P.2d 1353, 1363 (Okla. 1974)). As will be explained below, Plaintiff's claim fails on the third element—*i.e.*, whether the hanger pin was unreasonably dangerous.

"A product is defective in design if something about that design 'renders it less safe than expected by the ordinary consumer.'" *Wheeler v. HO Sports Inc.*, 232 F.3d 754, 758 (10th Cir. 2000) (quoting *Lamke v. Futorian Corp.,* 709 P.2d 684, 686 (Okla. 1985)). If a product poses a danger "beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics," it is considered "unreasonably dangerous." *Woods v. Fruehauf Trailer Corp.*, 765 P.2d 770, 774 (Okla. 1988). Whether a product is more dangerous than would be expected by the ordinary consumer is an objective test. *Cox v. Ohio Mfg. Co.*, 732 F. Supp. 1555, 1560 (W.D. Okla. 1987).

The ordinary consumer (or user) of a roll-off hoist is a trained operator. "That individual will be trained as to its proper operation and how to use any available safety features . . . ." *Braswell v. Cincinnati Inc.*, 731 F.3d 1081, 1089 (10th Cir. 2013). "Specifically, the ordinary user would be aware of the extreme danger and risk of"

8

tightening—as opposed to loosening—the winch cable while preparing to load a container onto the roll-off hoist. *See id.* And that is, despite Mr. Hayes' training to the contrary, what happened here. *See* Galfab Mot. Summ. J., Ex. 8 at 19; Galfab Mot. Summ. J., Ex. 13, ¶ 7. On the current record, there is no evidence that the hanger pin, if part of a roll-off hoist that is being operated properly, "poses a danger beyond that which an ordinary user would expect." *Braswell*, 731 F.3d at 1089; *see also Haygood v. JWC Env't., Inc.*, No. CIV-20-863-D, 2023 WL 4424273, at *4 (W.D. Okla. July 10, 2023) ("Properly operated, the Grinder does not pose a risk of the injury suffered by Plaintiff.").

But "even where a product's design defect makes the product unreasonably dangerous, Oklahoma law does not impose liability if the product contains a warning that adequately addresses the known risks of use." *McPhail v. Deere & Co.,* 529 F.3d 947, 958 (10th Cir. 2008); *see also Treadway v. Uniroyal Tire Co.*, 766 P.2d 938, 947 n.14 (Okla. 1988) ("Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." (emphasis omitted) (quoting Restatement (Second) of Torts § 402A cmt. j. (1965))).

Even if the hanger pin were unreasonably dangerous, "[t]he ordinary operator of a [roll-off hoist] would also heed the warnings on the machine and in the instruction manual." *Braswell*, 731 F.3d at 1089-90; *see also Hutchins v. Silicone Specialties, Inc.*, 881 P.2d 64, 67 (Okla. 1993) (holding that manufacturer was not required to foresee that "professional waterproofers would fail to read its warnings, and then use the P–3100 in a manner that the manufacturer's instructions expressly warned against"). Here, the warnings and

9

instructions that Mr. Hayes reviewed "were sufficient to make the machine not unreasonably dangerous, as it covered all the salient dangers accompanying its operation." *Id.* at 1090. Envirodispose trained Mr. Hayes on how to properly operate the roll-off hoist, including specific instructions informing Mr. Hayes to "[r]etract the winch cylinders, pull the cable out to the rear of the hoist and raise the hoist so that the ground roller touches the ground." Galfab Mot. Summ. J., Ex. 5 at 8. And Mr. Hayes was explicitly warned that improper operation of the roll-off hoist could lead to serious injury or death. *Id.* at 3. Like the manufacturer in *Hutchins*, Galfab was "not required to foresee that [Mr. Hayes] would fail to read its warnings, and then use the [roll-off hoist] in a manner that [Galfab's] instructions expressly warned against." *Hutchins*, 881 P.2d at 67.

"While the warnings, admittedly, did not cover the *exact* scenario presented here[,] . . . such granular specificity for warnings" is not required. *Braswell*, 731 F.3d at 1090 (emphasis in original). Indeed, Galfab's warnings and training materials did not specifically warn against the danger of improperly operating the roll-off hoist by tightening—instead of loosening—the cable winch all while under the influence of a significant amount of methamphetamine and amphetamine. But Galfab did warn users that improper use of the roll-off hoist could lead to injury or death, and the training materials specifically instruct a user on how to operate the roll-off hoist system. Galfab Mot. Summ. J., Ex. 5 at 3, 8.[8]

---

[8] In her additional facts precluding summary judgment, Plaintiff makes much of Galfab's operation manual instructing users to "snug the cable." *See* Pl.'s Resp. at 11. But a user is instructed to "snug the cable" when *unloading* a container from the roll-off hoist. It is undisputed that, at the time of the accident, Mr. Hayes was attempting to *load* a container. It is unclear to the Court how instructions related to unloading a container are relevant when it is undisputed Mr. Hayes was attempting to load a container at the time of the accident.

Additionally, Mr. Hayes was warned not to operate the roll-off hoist if his work ability was impaired. *Id.* at 16. It is undisputed Mr. Hayes "knew of the danger he faced" by failing to operate the roll-off hoist in accordance with Galfab's and Envirodispose's training materials and warnings. *See Braswell*, 731 F.3d at 1090. Unfortunately, and tragically, Mr. Hayes failed to abide by his training or heed Galfab's and Envirodispose's warnings. *See Duane v. Okla. Gas & Elec. Co.*, 833 P.2d 284, 286 (Okla. 1992) ("[T]here is no duty on a manufacturer or seller to warn of a product-connected danger which is obvious or generally known, and there is no duty to warn a knowledgeable user of the product of the dangers associated therewith."); *Daniel v. Ben E. Keith Co.*, 97 F.3d 1329, 1334 (10th Cir. 1996) (holding that there is no need to provide "warning labels to identify so specifically the consequences of misusing a product" when danger of "mixing all-purpose bleach with cooking oil and boiling water" was apparent "to an ordinary user from the nature of the product").

Further, this is not a scenario where Galfab was aware of some danger unknown to the typical user of the roll-off hoist, thus warranting a warning aimed at that danger. Unlike a case like *McPhail*, where the defendant was aware that users sometimes misused the product in a potentially dangerous manner, there is no evidence before the Court that the roll-off hoist's hanger pin routinely (or ever) built up too much pressure to the point of shearing. *See McPhail*, 529 F.3d at 959. To the contrary, Galfab has used the same roll-off hoist design for over 30 years and, prior to Mr. Hayes' accident, was unaware of any issues relating to the hanger pin causing *any* injury, let the alone a fatal injury stemming from the circumstances present here. *See* Galfab Mot. Summ. J., Ex. 12.

For these reasons, the hanger pin, as designed, cannot be considered "dangerous beyond that which would be contemplated by the ordinary consumer who purchases [or uses] it, with the ordinary knowledge common to the community as to its characteristics." *Woods*, 765 P.2d at 774. Accordingly, Galfab is entitled to summary judgment on Plaintiff's products-liability claim. *See Celotex Corp.*, 477 U.S. at 322 ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case.").

## II.     Galfab is entitled to summary judgment on Plaintiff's negligence claim.

Although "it is highly unlikely a plaintiff will prevail on a negligence claim when he cannot do so on a products liability claim," *Braswell*, 731 F.3d at 1093 n.4, a plaintiff *may* prevail on their negligence claim absent the existence of an actual defect. As explained by Judge Heaton in *Smith v. Cent. Mine Equip. Co.*:

> Although it may be unusual for a negligence claim to survive summary judgment where the manufacturer's product liability claim does not, that result is permitted under Oklahoma law. While the strict-tort claim focuses on the characteristics of the product and its foreseeable users' expectations, negligence inquires into the reasonableness of the manufacturer's actions in light of foreseeable risks of harm. As a result, the two theories of recovery can yield different results.

876 F. Supp. 2d 1261, 1270 (W.D. Okla. 2012) (internal citation omitted). Accordingly, although the hanger pin does not pose a danger "beyond that which would be contemplated by the ordinary consumer," this does not on its own preclude Plaintiff from prevailing on her negligence claim.

To prevail on her negligence claim, Plaintiff must establish that Galfab owed Mr. Hayes a legal duty, Galfab breached that duty, and Galfab's breach was the direct and

12

proximate cause of Mr. Hayes' death. *Lockhart v. Loosen,* 943 P.2d 1074, 1079 (Okla. 1997). Galfab argues that, even if it owed Mr. Hayes a duty, it discharged its duty because the hanger pin was "suitable and safe for the purpose for which it [was] to be used when it [was] sold by [Galfab]." Galfab Mot. Summ. J. at 23. But even if a fact question exists as to duty, Galfab maintains Mr. Hayes' "training and experience, coupled with his actions in operating the hoist while under the influence was the proximate cause of the accident and/or was a supervening cause preventing Plaintiff's claim." *Id.*

Plaintiff, on the other hand, contends she has "provided direct evidence that the subject roll-off hoist and its component hanger pin were not suitable and safe when sold because the pin is able to hold only a fraction of the cable tension, creating a condition where the pin is able to store a significant amount of energy only to release that energy in an unpredictable and dangerous manner when the pin breaks." Pl.'s Resp. at 27; *see also id.* at 27-30 (setting forth evidence purportedly showing negligence by Galfab in the design and development of the roll-off hoist).

On the current record, there is no genuine dispute of material fact as to the duty, breach, and proximate cause elements of Plaintiff's negligence claim. Whether Galfab owed a duty is a question of law for the Court. *Wofford v. E. State Hosp.,* 795 P.2d 516, 519 (Okla. 1990). "Under Oklahoma law, a manufacturer must exercise ordinary care in the design and manufacture of a product to protect foreseeable users of its products from foreseeable risks of harm." *Tate v. Statco Eng. And Fabricators, Inc.*, No. 12–CV–0002–JHP, 2013 WL 6185476, at *3 (E.D. Okla. Nov. 25, 2013). It is undisputed that, in the over 30 years Galfab has used the design of the roll-off hoist at issue, it is unaware of any issues

13

related to the hanger pin causing any injuries to users. Galfab Mot. Summ. J., Ex. 12 at 2. Perhaps if there existed a history of roll-off hoist operators tightening, instead of loosening, the cable causing the hanger pin to shear, Galfab would have a duty to manufacture a hanger pin resistant to such shearing. But that is not the case here; therefore, Galfab did not owe Mr. Hayes such a duty.

But even if Galfab owed a duty to Mr. Hayes, it did not breach that duty. To establish a breach, Plaintiff must show that the "design was unreasonable in light of the likelihood and magnitude of the foreseeable hazard and in light of the costs required to reduce or eliminate it." *Smith*, 876 F. Supp. 2d at 1269. As mentioned above, there is no evidence in the record tending to show Galfab had any reason to think a scenario such as this was likely. In fact, the opposite is true. As discussed above, Galfab has used the same roll-off hoist design for over 30 years and, prior to Mr. Hayes' accident, was unaware of any issues relating to the hanger pin causing *any* injury, let alone a fatal injury stemming from the circumstances present here. *See* Galfab Mot. Summ. J., Ex. 12. It cannot be said that Galfab's design of the hanger pin was unreasonable.

Last, assuming Galfab owed Mr. Hayes a duty and breached that duty, Plaintiff still must show that Galfab's actions were the proximate cause of Mr. Hayes' death—*i.e.*, the "natural and continuous sequence, unbroken by an independent cause, [that] produces the event and without which the event would not have occurred." *Johnson v. Mid–South Sports, Inc.,* 806 P.2d 1107, 1109 (Okla. 1991).[9] A "defendant's liability may be cut off if

---

[9] The Court assumes without deciding that the hanger pin was a direct, or but-for, cause of Mr. Hayes' death.

14

the defendant can show that a supervening cause was the proximate cause[] [of] the plaintiff's injuries." *Hawn v. Cook Pump Co.*, No. 13–CV–0529–CVE–TLW, 2014 WL 4930637, at *5 (N.D. Okla. Oct. 1, 2014). The Oklahoma Supreme Court has characterized the supervening-cause doctrine as follows:

> For an intervenor's act to become a "supervening cause" and cut off possible liability for the original negligence, it must (1) be independent of the primary negligence, (2) be adequate of *itself* to bring about the injury complained of and (3) not be a reasonably foreseeable event. When such an act qualifies as a *supervening cause,* the original negligence mutates into a mere condition and as a matter of law is no longer actionable. When, however, the intervening act is a *reasonably foreseeable consequence* of the primary negligence, the original wrongdoer will not be relieved of liability. Also, where the primary act of negligence is not superseded by a second cause—i.e, continues to operate concurrently, so that damage is the result of both causes acting in concert—each act may be regarded as the proximate cause and the wrongdoers will be jointly and severally liable for the plaintiff's compensable harm.

*Lockhart,* 943 P.2d at 1079 (emphasis in original).

Here, Plaintiff admits Mr. Hayes received training on how to properly operate the roll-off hoist and was warned of the dangers associated with improper operation. Galfab Mot. Summ. J., Ex. 4. Plaintiff also admits Mr. Hayes was instructed not to operate the roll-off hoist while his work ability was impaired. Galfab Mot. Summ. J., Ex. 5 at 16. Despite that, it is undisputed that Mr. Hayes, while under the influence of methamphetamine and amphetamine, improperly operated the roll-off hoist by retracting the winch cable instead of loosening the winch cable before the container-loading operation. Galfab Mot. Summ. J., Ex. 8 at 19.

The Court finds that Mr. Hayes improperly operating the roll-off hoist in direct conflict with his training, and while under the influence of methamphetamine and

amphetamine, was: (1) independent of any act of Galfab; (2) was adequate to have caused his death; and (3) Plaintiff fails to present any evidence that Galfab should have foreseen that "a knowledgeable user would disregard [applicable warnings and training]." *See Hawn*, 2014 WL 4930637, at *5. Even if Galfab's actions "created a condition under which [Mr. Hayes] could be injured, it was the conduct of [Mr. Hayes] . . . that independently caused [his death] and [Galfab] cannot be held liable for any negligence it may have committed." *Id.*; *see also Akin v. Mo. Pac. R.R. Co.*, 977 P.2d 1040, 1055 (Okla. 1998) ("[I]f the negligence complained of merely affords an opportunity that makes the injury possible and a subsequent act causes that injury, the opportunity is not the proximate cause of the injury"). Therefore, Mr. Hayes' own actions were a supervening cause.

### III. Because Plaintiff's claims fail as a matter of law, Plaintiff's request for punitive damages necessarily fails.

Because the Court has determined Galfab is entitled to judgment as a matter of law on Plaintiff's products-liability and negligence claims, Plaintiff's request for punitive damages necessarily fails. *See Moore v. Metro. Utilities Co.*, 477 P.2d 692, 694 (Okla. 1970) ("In the absence of actual damages, there can be no recovery of exemplary damages."); *see also Hinds v. Warren Transp., Inc.*, 882 P.2d 1099, 1102 (Okla. Civ. App. 1994) ("Only where there is evidence in the record supporting an inference of gross negligence or reckless disregard and/or indifference for the safety of others must the issue of punitive damages be submitted to the jury.").

## CONCLUSION

For the reasons explained herein, Galfab is entitled to summary judgment on Plaintiff's products-liability claim, negligence claim, and her request for punitive damages.

**IT IS THEREFORE ORDERED** that Galfab's Motion for Summary Judgment [Doc. No. 72] is **GRANTED**, as set forth herein. Further, Plaintiff's Omnibus Motion in Limine [Doc. No. 92] is **DENIED** as moot.

A separate judgment shall be entered accordingly.

**IT IS SO ORDERED** this 14th day of August, 2024.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge